Mr. Hummel, whenever you are ready. Thank you, Chief Judge, Your Honors, and may it please the Court. My name is David John Hummel, and along with my colleague Andrew Wyszynski, we represent the Plaintiff Appellant Eleanor McGinn in this matter. I would like to make two basic points for this argument. First, consistent with the controlling precedent of J.D. v. Colonial Williamsburg, there are fact issues as to whether Broadmead sufficiently can account for Ms. McGinn's celiac disease. And second, the District Court failed to construe the record in favor of Ms. McGinn, which would render her claims not only timely, but worthy of a jury's attention. Starting with the equitable relief, the first issue, it is an agreement between the parties that Ms. McGinn has celiac disease, she has no margin for error, so if she consumes gluten, she can suffer short-term and long-term hop consequences that could be dire. With that in mind, she has requested two particular forms of relief and equitable relief. First, a reasonable range of safe, gluten-free food, which would inherently require a safe and reliable menu. And second, a certified gluten-free kitchen with adequately trained staff. In terms of implementing these requests, they are easy to implement, they are not difficult to master, hospitals do it, restaurants do it, universities do it. As cited in amicus briefs, there are two universities, Lesley University and Rider University, in which the Department of Justice entered into public settlements to require gluten-free accommodations. It is not cost prohibitive, for instance, in Ms. McGinn's papers, as well as in the amicus brief of the National Celiac Association and Disability Law Center of Virginia. There are citations to a company, for instance, Menu Trinfo, that would certify a kitchen to be gluten-free. And even the company that BroadMeet used to do its single online training course, the gluten-free certification program, also offers certification. And last I checked this morning, it costs about $1,300. And without receiving those accommodations, Ms. McGinn, as a paying customer, she's not getting what she's paying for, and in terms of federal law, she's not receiving a like experience as compared to her peers at BroadMeet. So, Ronald, can I, sorry to interrupt you. So there were a number of changes that the facility implemented that the record shows. Is your argument that those didn't go far enough, and if so, where do the deficiencies still lie? Chief Judge Diaz, the inefficiencies still lie in implementing Ms. McGinn's two requests globally. The district court erroneously stated on JA 813 that BroadMeet implemented a safe, reasonable range of gluten-free options and entered into a certified gluten-free program. There was a change in which BroadMeet entered into single online training courses, which depending on the user, took anywhere between 60 minutes to a few hours to take that course. But BroadMeet admitted in its papers before the district court that they did not implement the full range of safe gluten-free options, and there's nothing in the record to say that they entered into a certified gluten-free program. And another change, Chief Judge Diaz, is the labeling system from gluten-free to gluten-friendly, and gluten-friendly expressly disclaims whether the food is or is not gluten-free. And was that part of the original record in this case? Because I think there's a timing problem there for you, right? Because that occurred after the fact. It did occur after the fact of when the lawsuit was filed, but there's a reasonable inference to be drawn that in 2024 when BroadMeet implemented a gluten-friendly labeling system, the reasonable inference is that with years of experience of dealing with Ms. McGinn, of entering the online course, they discovered they are incapable of ensuring the food is safe and gluten-free. What is in the record at the time of the filing of the lawsuit and admitted in the answer is that BroadMeet guaranteed safe gluten-free food for Ms. McGinn in all of its dining venues. When Ms. McGinn first started at BroadMeet, she interviewed the then Director of Dining, Bernard Queen, a number of times. She met with the marketing department. She received a colorful brochure that stated, we accommodate those with celiac disease and who require gluten-free diets. The then CEO, Robin Summers, said that a person should reasonably rely on these materials. But throughout the lifespan of the case, take, for example, in the summer of 2020, Ms. McGinn consumed a stuffed tomato that was wrongly labeled gluten-free. Before you get to that, I want to go back to the points that you made in response to my first question about what the facility did and what you think needed to happen. You said that the district court erroneously concluded that what the facility did was a sufficient accommodation. The question is, is that a question of fact, a question of law, a mixed question? And how are we supposed to look at that? Because you say the district court got it wrong. So how should we consider that? Yes, Chief Judge, I would say the first here that this case is rife with fact issues. Going back to J.D., whether or not that underlying restaurant, the Shields Tavern, sufficiently accounted for whether he had celiac disease or non-celiac gluten sensitivity, that was a fact issue there, even based on those protocols and in that case, as Judge Wilkinson recounted in the dissent, the head chef completed thousands of gluten-free meals, never received a single complaint. Whereas by contrast here, Ms. McGinn was undisputedly exposed to gluten by broad meat and there's issues with that. Well, but the issue in J.D. was not the issue that Judge Wilkinson raised in his dissent, but the question of whether or not the reasonable accommodation of letting the student bring his own food into the facility was sufficient and we found that that was a question of fact. This is not that case, right? Because the facility is saying, look, we've done A, B, C, D, and E, and your client is saying that's not enough, we need to do all these other things. And then the district court also found that even with those changes, that there was no indication that Ms. McGinn was ever going to go back to eating at the facility. She was cooking her own meals and to the extent she was purchasing meals, she was giving them out to her friends at the facility. So what are we supposed to do with all of that? Yes, Your Honor. Let me take that in two parts. First in terms of what broad meat implemented and second in terms of Ms. McGinn's intent to return. First, in terms of what broad meat implemented, I think the relation to J.D., certainly there's differences in the case of the accommodation that was sought and what happened. But one common thread is even if an accommodation is being offered, as the majority decision in J.D. said, that there still may need to be a further accommodation. In here, even if broad meat entered into the online training, during the midst of summary judgment briefing, Ms. McGinn spotted repeated errors in the menus over and over again. In the summer of 2024 on Memorial Day weekend and repeatedly in June, there were mislabeled items and that's what's been happening to her through her entire stay. Even back in the summer of 2020, that's when she received the stuffed tomato erroneously marked gluten-free. So it's clear that broad meat, whatever they've implemented to date and they haven't implemented Ms. McGinn's requested changes, it's not enough and they need to do more. Now turning to the second point, the plausible intent to return, Ms. McGinn does have an intent to return. She lives at Broadmead. She uses the meal plan. There's nothing in the record in which she stated, I will never go back to Broadmead. It's borne out by her actions of making requests. Even in the record at JA401 to 402 in her sworn affidavit, she discusses one of these recent mislabelings in 2024 where she said that the then Director of Dining, Dan Hall, was deposed, touted new gluten-free macaroni. In the Memorial Day weekend menu, there was gluten-safe macaroni salad. Now hearing what Dan Hall said, she was close to trying what that macaroni salad could be, but then because she's hypervigilant, she asked a staff member to double check. Thankfully, she did because a staff member came back and said, it is not gluten-free macaroni. With the request for accommodations, it's important to recognize that, and this is quoting Ms. McGinn in one of her prior affidavits, this is an old age home. The folks there aren't getting any younger, they aren't getting any sharper, and although Ms. McGinn is sprightly, and I would say that if she were not here, she will get older and there will be a cognitive decline. She needs to be able to trust Broadmead going forward. She's going to celebrate her 85th birthday in January to make sure that they can take care of her, that she doesn't need to investigate all of their mistakes as she has done since 2017. She has sent a litany of emails, she has offered to don gloves, she has sent suggestions for gluten-free products, and her requests have gone unheeded. Now turning briefly to the second point I would like to make in terms of the timeliness and the fact-worthiness of these questions, there's a claim in this case for Ms. McGinn to receive a better variety and quality of gluten-free options. We seek that both in terms of equitable relief, but also in terms of monetary damages. The district judge- Let me ask you about that because the incidents from, I think it's the stuffed tomato and the crab cake, I mean, it appears, well, the argument is that you all have a statute of limitations issue on those, and also maybe the chicken marsala incident because they occurred, you know, they occurred, I think, at 20 more, let's say, beyond the statute of limitations period. So I just want to hear your position on that. Those are the three incidents that she, I guess, can allege she was harmed, and she hasn't eaten any of the food since 2021. Do you have a statute of limitations issue here? No, we do not. I'll table for a second the variety and quality claim because she does pursue that for monetary harm, but focusing on the three dishes, the stuffed tomato she does not press on appeal, that occurred in June 2020. For the chicken marsala, that is timely. That occurred in January 2021. So focusing on the timeliness of the crab cake, where the district court erred is Maryland's discovery rule. So there's no dispute in the record that Ms. McGinn knew she was exposed to gluten when she consumed the crab cake. She had her hallmark symptoms of violent vomiting, but the differences in what the district court overlooked is knowledge of the harm is distinct from knowledge of the wrongdoing. So she knew that she was injured from gluten exposure. She didn't know what Broadmeat did until 2021. She knew something was wrong. She got sick, right? She did, and I think that's another fact issue of whether or not she performed reasonable diligence, whether it was reasonably possible for her to obtain that information. Because an important point, Judge Benjamin, is not until 2021 did Broadmeat even know that Rice Krispies, which they used as a filler, contained gluten. Ms. McGinn told them during that phone conversation. So there's a question of fact, even if Ms. McGinn investigated further, whether she would uncover what the wrong was. And an easy way to look at the wrongdoing is the breach of contract claim. So it's undisputed between the parties in the contract and upon agreement that Ms. McGinn is entitled to properly cooked meals, and that means gluten-free meals for her. So what she expected at the time was, this is a few months after she came to Broadmeat. They're going to take care of me. They gave me the assurances. They gave me the advertising material. A server must have grabbed the wrong crab cake and served me the wrong one. Under that assumption, they made a properly cooked meal. She didn't get it. But what she discovered in 2021, and there's fact issues about this, is that they used Rice Krispies. There was never a properly cooked meal for her. That is poisonous to her, and that would cause gluten exposure. Even on that first scenario, didn't you have a claim then? I mean, they gave her the wrong meal, even if they had properly prepared a different meal. It's possible that she could have had a claim based on the server's conduct, if she pursued a negligence claim based on what the server did, but in terms of her due diligence of investigating, she sent an email asking if they used imitation crab meat, which can contain gluten, because the night earlier, she was at the salad bar, and they did have imitation crab meat, which did contain gluten. But even looking at the breach of contract claim, we see that there was no properly cooked meal. So even if she had a claim potentially under negligence, she would not have a claim under breach of contract until 2021. And even for the negligence claim, there are fact issues of the information she had in terms of broad means wrongdoing. She didn't have that information until 2021. Well, she knew, I mean, she knew after she ate the food, she knew immediately that she was sick, right? I mean, I'm not, I understand you're trying to frame it to say, well, she didn't know exactly what they put in the food, but she knew that there was some gluten in the food that made her sick, right? Chief Judge Diaz, I see my time's up. May I respond to Judge Benjamin's question?  Judge Benjamin, she did know, and we don't dispute that she was aware of her injury, but it's a dispute of whether she knew of broad means wrongdoing. And Maryland state case law needs to connect whether she had sufficient information to connect her injury to the wrongdoing. And it wasn't until 2021 where she knew that broad meat, for whatever reason, used a filler that contained gluten. Thank you very much. Mr. Harnell, before you sit down, let me ask my colleagues if they have any additional questions. Yes, sir. Just to follow up the last thing you said, so you're saying that it's understood two things. One, she would know if she ate a gluten laden food because the reaction is dire and immediate. Two, the sole provider of everything she consumed was the defendant, right? Yes, that's true. So why wouldn't she know then, once she experienced that gluten reaction and she knows who gave her the food, why wouldn't that complete her claim on the contract or negligence? Both, either one of them at that time in terms of knowledge. It's not a duty to investigate. It's a point you reasonably would have known there is an injury, duty, causation, right? Well, you know, right? Don't you have all of the elements of a, not saying you're going to prevail, but don't you have every element of a tortious or contractual claim at that time, knowledge? No, because Judge Greger, we're not aware of what the precise breach was. The breach was they fed her food that had gluten in it and it caused a reaction. That's, what else is there left in terms of notice for one to be on notice that the statute runs at that time? Well, because there's a difference between whether or not Ms. Meehan's belief at the time, which is fact intensive, was whether she was served the wrong crab cake and Broadmead did in fact make her a safe gluten-free crab cake. It doesn't matter whether they did it deliberately. It's negligence. Okay, we had a crab cake for her that was gluten-free, but somehow we managed to give her one that wasn't. It doesn't matter whether you're saying that until you know that they really deliberately did this. That's not what you require really for breach, is it? Or non-negligence. Well, Judge Greger, if you're unpersuaded by the negligence claim that I- I didn't say I was unpersuaded. I'm just asking a question. I'm trying to get you to, don't put things in my mind. No, no, no. I'm just asking questions at this point. And I certainly hope not, Judge Greger. And certainly on rebuttal, I'll address why your questions are very relevant and helpful to Chicken Marsala. But I would say even tabling the negligence claim, there was no properly cooked meal. And that was Ms. Meehan's belief, is that she thought maybe a server grabbed the right one, gave it to a colleague next to her. It wasn't until 2021 where she knew that pursuant to the contract, there was not a properly cooked meal made. Thank you very much. Thank you very much. Mr. Stanislau? May it please the Court. Thomas Stanislau on behalf of Broadmead, Inc. As my friend on the other side acknowledged, at first blush, this appears to be a complex case with a factually dense record. That said, I'd like to focus on what we see as the cleanest path to affirmance. And that involves two steps. The first is concluding, as the district court did, that the statute of limitations bars Ms. Meehan's federal and most of her state law claims. And the second step is affirming the district court's conclusion that Ms. Meehan failed to produce more than a scintilla of evidence that the chicken marsala actually contained gluten. If the court agrees on both points, the factual disputes, even if construed in Ms. Meehan's favor, become irrelevant. Before I dive into each of those two steps, I do want to set out two overarching themes that I think are borne out in the record and are important to consider here. The first is that if you look through the record, every time there has been an incident in which Ms. Meehan has claimed she has consumed gluten, felt the ill effects of gluten, or found a mislabeling, Broadmead has worked with her and attempted to do so in a fashion where they are joined together trying to ensure that future incidents don't happen. And the second aspect, and this is particularly in reference to her federal claims, Ms. Meehan as highlighted in my friend on the other side's opening argument, is making frequent complaints about what she calls repeated errors in the menus. In effect, what she's asking this court to do is hold that federal discrimination laws require perfection, absent human mistake. And respectfully, that's not what they are designed to do. And in fact, that is the very reason why negligence claims exist in the first place. Because people aren't perfect, no matter how hard they try, and individual incidents of mistakes do not amount to federal discrimination. There's no negligent discrimination claim. Those are independent negligence claims. So with those two themes in mind, turning to the statute of limitations, Ms. Meehan's federal discrimination claims first accrued in January of 2019 when she emailed Mr. Hall complaining about the lack of variety in Broadmeat's gluten-free offerings. She's never denied this, not before the district court, not here. Instead, she maintained consistently below that her federal claims were nevertheless timely based solely on the continuing violations doctrine. And I would encourage the court to look at ECF document number 44 in the district court's record, which is her response in opposition to Broadmeat's motion for summary judgment raising the statute of limitations. Counsel, sorry to interrupt you. I just want to be clear that I understand when you talk about the federal discrimination claim and the lack of a variety of menu items, are you also including the lack of reasonable accommodation, the ADA claim in that umbrella of claims? Under the statute. A lack of variety and a lack of accommodation seem to me to be two different things. Under the statute of limitations analysis, which is where I'm focusing our attention now, because the district court held not only that the RA and FHA claims were barred by statute of limitations, but in footnote four made clear that that analysis applied to Ms. McGinn's ADA claim as well. More than happy to go into the standing analysis the court did on the ADA claim. It just struck us that the cleanest path towards affirmance was the statute of limitations. No, I understand. And I'm following you. I just wanted to be sure that you were talking about the ADA claim as well when you talk about a lack of variety, because it seems like that's different from failure to accommodate. I understand, Chief Judge. And I think that that brings us back to what are the actual accrual dates for Ms. McGinn's federal discrimination claims? When did they begin? Ms. McGinn, she maintained below that it was the continuing violations doctrine, that it was the course and conduct that had occurred. She appears to have abandoned that argument altogether in her reply brief before this court. If you look at page 14, Ms. McGinn refers to the continuing violations doctrine as a straw man that was left behind at the district court and not referenced in her opening brief. I've read it five times to make sure that that was, in fact, the waiver that I believe it is. But that was the only argument she raised below regarding the timeliness of her federal claims. And as a result, she's waived any other contention that they fell within the statute of limitations. But nevertheless, now, for the first time on appeal, Ms. McGinn, she's wrong for two reasons. First, she never asserted below that these interactions on their own amount to discriminatory acts under the ADA, RA, or FHA. Thus, she cannot now, for the first time in the case, take the position that they resurrect her statutory limited claims. And second, Ms. McGinn cannot contend on this record that those communications amounted to discrimination. Indeed, Ms. Summers never denied any of Ms. McGinn's requests for which she could have recovered under the federal discrimination statutes. And I'd like to focus on what was actually communicated in those messages in March and May of 23. So in there, Ms. McGinn asked for three things. First, was full repayment of every penny she's given Broadmead. The denial of that is not discrimination. So I'm going to set that aside for now. The second, she asked that Broadmead staff undergo a certification process that she agrees to and is allowed to participate in. In Ms. Summers' response to that email, she said, we're denying that for now, immediately, but we're going to look into certification. And in fact, in April of 2023, in between the March and May communications, that's when Broadmead paid for and began the certification process for its staff members. So they acknowledged and agreed to that request. And the third is the request that Broadmead expand its loot and free offerings. And there, I would direct the court to JA 560 and 561, which was from the winter to spring, winter of 23 to spring of 24, that explains all of the expansion of gluten-free offerings that Broadmead is going to make. I would direct the court to JA 517 to 27, 599 to 600, 646 to 47, 469, and 691 to 92, all of which are instances where Ms. McGinn has asked for meals to be made gluten-free and made specific requests for how they be made, and all of which that Broadmead has assented and agreed to provide. That, again, goes back to the theme, Broadmead is working with Ms. McGinn and has been to try and make this as pleasant a process as possible for her. But Ms. McGinn, unfortunately, suffers from food anxiety, and it's not within the realm of possibility or within the realm of anything a court can order for Broadmead to alleviate her food anxiety. Are you certain of the diagnosis yourself or something in the record that was suggested? Of the diagnosis, that she has celiac disease? No, no, I thought you said anxiety. Of food anxiety. That's something that she represented in her deposition multiple times. So she's acknowledged that she doesn't eat at restaurants, she doesn't eat with friends, she doesn't eat with family, she prepares all of the food herself. I assume it's because she can't be certain that she doesn't have gluten in it, right? I mean, her food anxiety, I mean, never mind, go ahead. But go ahead, finish your thought. Sorry, Judge Gregory, I think that's an important point. That's why I said go ahead, I didn't say dismiss your point. Ms. McGinn suffers from food anxiety, and I think it's important to note, and that's a contrasting point here with J.D. So in J.D., you have a child who can't eat food containing gluten, he doesn't trust restaurants, and how did the restaurant respond? They said either you can sit here and not eat, or we're going to kick you out, and you have to go out and eat your food outside. That is not what's happening here. Ms. McGinn has pointed to no policy barring entry to its facilities. There is no policy in place suggesting that if she brought her own food in, that Broadmead wouldn't let her eat it or would remove her from the premises. At the end of the day, though, Broadmead can't cure that food anxiety, and federal discrimination statutes don't require it to. So, turning to the state law claims, as my friend on the other side already acknowledged, the stuffed tomato incident is outside of the statute of limitations, so that's not an issue. As this court addressed at length, the discovery rule doesn't apply in this context to the acknowledged that at the time she consumed the crab cake, she believed she had eaten gluten, and importantly, she began an investigation at that point. She affirmatively reached out to Broadmead staff, asked if it had an ingredient that she knew to contain gluten, and Broadmead staff responded no. It contained actual crab meat. So, what about the chicken marsala incident? Since that one was in, I think, February of 2021. Wouldn't that fall for purposes of the state law claims within the statute of limitations? It would, Judge McGinn. And so, why should we disregard that February 2021 incident? Not for statute of limitations purposes. Yes, why? So, it falls within the statute of limitations, but it's Broadmead's position, and the court bears out, that Ms. McGinn has failed to adduce more than a scintilla of evidence suggesting that the chicken marsala dish itself actually contains gluten. Well, what about, I think it's Ms. Malone, the lady that's over dining services, her emails. They're pretty clear. I think she says that somewhere along the line, we fail. And then she said, I was trying to, how, somewhere along the line, there was a failure. I think that said, JA 595. And then she says again, in another email on 597, how we failed again, and how this process has failed. So, it seems to be some acknowledgement there from Ms. Malone, who is over dining services, there was some failure. So, how is that not a question of fact on that claim? Excuse me for interrupting you, Judge Benjamin. There are two points there. The first is, I think it's important to look at those statements in the context in which they were made. The statements weren't just, there was a failure. And we will find it. Somewhere along the line, a failure was made. There's no actual determination that there had, in fact, been a failure. What this was, was a mid-investigation statement to Ms. McGinn, acknowledging, basically trying to say, we're doing all that we can to figure out what happened here. But that's not an admission that there was actually gluten in the chicken marsala dish. And that's important for two primary reasons. First, is that Broadmead's investigation actually found there wasn't gluten in the chicken marsala dish. When it finished, it concluded. But there's this issue regarding cross-contamination. There was a possibility that through cross-contamination, I think the gluten flour versus gluten-free flour was stored close to each other or something, and they moved them apart. I guess what I'm saying, how is that not an issue of fact? Well, first off, moving them after what happened is a subsequent remedial measure. I understand that. But I guess what I'm saying, how is it not an issue of fact? Especially with these emails where she is saying that there is a failure. I mean, somewhere along the line, there is a failure. I'm not sure if that's not an acknowledgment or not, or admission or not, that there was something happened. She got sick, right? She got sick, and we're not denying that she got sick. But the burden is on the plaintiff here to prove that there was actually gluten in the chicken marsala dish. But that would be an issue of fact, right? Right, and it's our position that at this stage, she hasn't come forward with more than a scintilla of evidence that there actually was gluten in there. And here's why. First, we have the preparer of the dish, who on his own said, I used rice flour. I always use rice flour. And that actually stems back all the way to the 2019 email, or letter that Ms. McGinn sent to Dan Hall, to which he responded at JA 288, that he was going to be making the upcoming pot roast and chicken marsala and short ribs dishes to be gluten free. So there was a process in place to make this dish gluten free. We've got the fact that nothing in Broadmeat's investigation revealed that there was actually gluten used in this dish. And then we've also got the fact that throughout discovery in this case, the closest that we've come to any suggestion that there was gluten in the dish are these mid-investigation, admittedly poor choice of words, but statements that there may have been a failure and we'll find it. And I would direct the court to the POTS case on that. And that's at 183 Maryland 483. And that was a pre-investigation statement that the court found not to be an admission. But in order for something to be admission, there has to be an actual knowledge of the facts to which you're admitting. And here, merely acknowledging the possibility that a failure had occurred cannot overcome the weight of the evidence showing that there was no gluten in the dish. And with that, unless the court has any other questions, I believe I'm happy to address the gluten friendly labeling if you want, or any other questions the court would have. I was just curious. So does Broadmeat not have the gluten-free menu anymore since you all switched to gluten friendly? Even though I don't understand that was after the fact. Yes. If you look at the labeling on the menu where it used to say GF and now says GFR, and then it's got an asterisk that goes down to the bottom of the menu that explains what gluten friendly is. And that's in the record. And I don't have the slide for that. But our ultimate point, and I think this was one that Chief Judge Diaz raised earlier, is that this was a post-discovery change. And this court has been clear that to the extent new claims or new arguments are being raised, even after discovery begins, that needs to be brought in an amended complaint, which wasn't done here. And that's the Sigley case, which the court decided earlier this year. All right. Thank you very much, counsel. Thank you. Mr. Hono, you've got some rebuttal. Thank you, Chief Judge, your honors. I would like to address a few points on rebuttal first. Let me start with my friend on the other side's theme of perfection. He also said that people aren't perfect. And that's true, myself included. Judge Gregory, I put words in your mouth. But we're not asking for perfection here. Ms. McGinn is asking for reasonable accommodations that Broadmead hasn't even attempted, to even try a certified gluten-free kitchen, because the consequences are dire. She's been hospitalized after consuming gluten. She had temporary paralysis. She thought she was going to die after she consumed the chicken marsala. She has no margin for error. And it's not just food anxiety born out of nothing. She has tried to work with Broadmead repeatedly for many years, since 2017, to make suggestions. And Broadmead still fails to implement reasonable changes. Judge Benjamin, your question about the gluten-friendly labeling, this, of course, is outside the record. But as of this month, October 2025, there's still the gluten-friendly labeling system. It's on the holiday menu and the Arbor Cafe menu. And it does go to the immediate threat of harm. It goes to actual injury in terms of reasonable deterrence. And at minimum, it confirms what is present in the record throughout the case, is that Broadmead has insufficient protocols to account for Ms. McGinn's celiac disease. At the very least, there's a fact question on that. Let me turn also to the chicken marsala, especially Judge Benjamin, your questions. There are statements in the record, which we look at as concessions from Joyce Malone, who is in charge of the dining services, that she didn't question Ms. McGinn's gluten exposure. She said, I will talk to Dan Hall, the then director of dining, about how this process failed. She spoke to Dan Hall, who presumably spoke to the preparer of the dish, who is the person that the district court relied on in ruling that there was no claim. But Joyce Malone still came back and said, somewhere along the line, there was a failure. She could have offered an affidavit at summary judgment to say this was customer service talk, or we concluded that there was no failure, but she didn't. So there's fact issues of whether or not Ms. McGinn consumed chicken marsala contaminated by gluten. And that's also- So this case goes to trial. What you have then would be that we found out there was none, but we think that somebody still believes there was a failure. Do you think that would be much more than a scintilla of evidence in terms of proving that fact? Because at summary judgment, we do it all the time in terms of Title VII cases. A lot of times people say, no, I know I was fired because of this reason. And then we say, no, nobody did this, and that, and that. The other fact is you still protest. And we have a lot of cases like that in that sense in terms of discrimination cases, where they say, no, you haven't shown it. So what would be that? You mean solely because- And I'm not discounting at all. It's very important. Obviously, this is a serious matter. No question about it. But saying that I ate it and I was sick, and that's enough if there's evidence that the chef said it wasn't, and you think that would be enough to carry the ball in terms of being more than scintilla of evidence to prove that fact? Yes, Judge Gregory. With the whole picture of the record, so the district judge looked at Ms. McGinn's testimony. I know my body. I consumed the chicken more solid than two to three hours. I vomited. The remnants, not great breakfast fodder discussion, but there is a picture of the vomiting record. But it's more than just Ms. McGinn saying that she was exposed to gluten and more than her expert saying, given the consistency of her symptoms, there was a gluten exposure. It's not only Joyce Malone's statement of a failure, but no one at Broadme questioned that Ms. McGinn was exposed to gluten. There's testimony from Jarrell Fleming that Joyce Malone recited. He was the executive chef where he thought what possibly happened was the flowers were mixed. Those are binding statements. A jury can consider that. When Ms. McGinn spoke with Joyce Malone, Dan Hall, and Jarrell Fleming in February 2021, they all professed ignorance. They didn't disclaim what she said. Dan Hall has stated in the record if there was incorrect information presented to him, he would correct it. He did not do so. But then CEO Robin Summers stated, Ms. McGinn, I'm sorry, you continue to experience reactions to gluten. I think with all those pieces together, there is enough for a jury to go beyond scintilla and even requiring the meager evidence that Maryland requires to send this case to a jury. And they could rule that Ms. McGinn consumed chicken marsala that contained gluten. So you think this case allows a strict liability almost? If she became ill from eating it, it's strict liability? It depends on the circumstances. And I think this goes back to our- But those are only circumstances, really. That is, she ate it and she became ill. And therefore, you must say it had gluten in it because she was ill. And therefore, they're responsible because there's no question they served it. So that's strict liability, isn't it? Well, I say it depends only in the sense of, let's say the crab cake example. If a server did do what Ms. McGinn thought at the time of their erroneously served it to her, there could be a dispute of whether or not that's negligent behavior. But I would say for what I was discussing in terms of chicken marsala, yes, in the sense of the contract guarantees properly cooked meals. If it wasn't properly cooked, that violates the contract. And in terms of negligence, there's enough evidence in the record that we would submit there are fact issues of whether or not there was a duty breach causation and damages because of what Broadbean knew, what they did with the rice flour. And I know that there are subsequent remedial measures, but it's not as if Ms. McGinn could even test the rice flour because they sanitized the bins and restocked them. Now, turning to the claims in variety, my colleague on the other side mentioned those about January 2019. There was no waiver. There's no waiver argument in the opposition brief. These claims were presented to the district court at ECF 39 at page 10. Broadbean stated that they did not provide the full request for reasonable range of gluten-free options. Those are claims the court can consider. And certainly January 2019 should not be a starting point because for example, Ms. McGinn is harmed every day she cannot consume food. There was a spring cycle menu in 2023 which assuredly did not exist in January 2019. There's also the bistro dining venue which did not exist until 2022. These are new harms that bear out the principle in this court's case in Hill of a renewed request for accommodation triggers a new stash of limitations. And finally, I want to make clear in terms of the equitable relief, Ms. McGinn is under a constant immediate threat of harm because of Broadway's insufficient protocols. There are fact issues about that. She suffers an actual injury from her reasonable deterrence to consume that food even though she has a intent to return and past injury. And there's the economic injury because she is paying every month for the meal plan. She pays $330 per month. It's not the quarterly meal plan that the district judge cited and she did not receive that in full. Chief Judge Diaz, I see my time's expired. May I conclude this thought? Let me ask you about that related to that. She's no longer paying for the meal plan, right? Or is she? She is. Okay. I thought there was some evidence in the record of a refund for some amounts of money. Sorry, Chief Judge. There is evidence in the record that Ms. McGinn requested to opt out of her entire meal plan, which is $330. But Robin Summers, the then CEO, said she would honor this request in the form of the away meal credit, which does not encompass the full $330. If you look at JA-644, it shows what the away meal credit is and it's a fraction of what the meals are. Ms. McGinn, this actually, this comes from page five of the opposition brief, although there's the wrong citation. It correctly states that Ms. McGinn has a monthly plan in which she receives a credit because she receives one meal. So she pays $330 as a starting point, but because she only consumes one meal per month, she receives a $126 credit at the end of the month for what would have been the other two meals. Even Robin Summers' offer of the away meal credit wouldn't subtract the remaining dollars. So even the offer that Broadme made wouldn't relieve Ms. McGinn of the responsibility of paying money every month for a service she does not use. Well, there must be some foods that she could eat and there's clearly no question of gluten in it. I mean, fruits and some vegetables and things like that. I mean, there must be, because you're suggesting that it's not a full refund. That's because, and maybe you tell me, aren't there some things that clearly is gluten-free itself that she could eat? I mean, comfortably eat, right? Assuredly so, Judge Gregory, but that goes to the like experience standard, which is relevant for the equitable relief as well as the monetary claim variety and quality, just because she needs a like experience compared to her peers. If they have 20 some odd options, but she has plain fish and plain chicken and fruit. She's 84 years old and this is her retirement. She wants to kind of enjoy the benefits. It's a cliche, but variety is the spice of life. And she wants different meals on a daily basis as other residents do. Thank you very much. And I'll ask this court to vacate and remand for further proceedings. Thank you. Thank you, counsel. Appreciate both counsel's excellent arguments this morning.
judges: Albert Diaz, Roger L. Gregory, DeAndrea Gist Benjamin